Next case on this morning's docket is Allison Wood v. Ashley Tarr, and we have Mr. Ryan Rice, the appellant, and Dean Nichols for the appellee. You may be seated and proceed when you're prepared to. Go ahead, Mr. Rice. Yes. Good morning, Your Honor. May I please report? Good morning. My name is Ryan Rice. I'm with the Hughes Law Firm in Carbondale. I represented Allison Wood in this rear-end auto crash. And to get right to the point, the law in Illinois is clear. In certain cases, a jury can award a plaintiff medical bills, but not award a plaintiff pants-up. And I'm not disputing that. This case is just not one of those cases. The jury in this case awarded – first of all, this case involved a rear-end auto crash in the city of Carbondale. And the facts of this crash were it wasn't one of these minor fender benders where the bumper is just scratched and there's little to no impact. My client was a passenger in a vehicle that was rear-ended, and the collision itself, the vehicle that we're in, the vehicle she was a passenger in, went over a foot underneath her vehicle. It caused the hood on the offending vehicle to be crinkled up towards the windshield. So this wasn't one of those minor fender bender wrecks. This was a pretty good jolt, pretty good impact. Unfortunately, we never had any photographs of the defendant's vehicle, so we had to rely solely upon the descriptions that the parties and witnesses provided as to the damage to the vehicles in this case. There weren't any pictures of either vehicle? There was a photograph of the vehicle that my client was a passenger in. The photograph is not all that impressive. And which vehicle was that? Was that the one that impacted or was impacted? My client was in the vehicle that was rear-ended, and the photograph of that vehicle is not all that impressive. But there are no photographs of the vehicle that caused the crash. And by the descriptions that the parties provided and the witnesses provided, there was a lot of damage to that car. And in fact, after the accident, the offending vehicle was actually about a foot underneath the vehicle that it was rear-ended. So I wanted to clear that up. The second thing is the driver of the vehicle that my client was a passenger in, she treated with the exact same doctor in this case, Dr. Brian Porter. And she also had neck pain and headaches and soft tissue injuries in this case. And that was her testimony at trial. Yet the defense claimed in this matter that Allison Wood could not have been injured in this crash. That's kind of some of the background of how this crash happened. I think the most important case to review is actually the Fifth District case of Murray v. Philpott. I don't say that because it's a Fifth District case. I say that because the medical evidence that's presented in that case is very, very similar to the medical evidence in this case. The Murray v. Philpott case from 1999 is actually three years after the Snomer Supreme Court case. That case involved an incident where a lady was riding a jet ski and she was knocked off. The lady was skiing and the ski rope struck her in the back of the head. And as a result, she had soft tissue injuries and about $9,000 in medical bills. The Fifth District Appellate Court said in that case, An award of zero damages for pain and suffering, along with an award for full damages for medical care and lost wages, ignores a proven element of damages that the jury is not free to disregard. The Fifth District Court said, In the Murray case, the Appellate Court ruled that the jury ignored the proven element of pain and suffering. The jury should have awarded the plaintiff pain and suffering. Therefore, the plaintiff was to be granted a new trial. That's exactly what happened in this case. The jury awarded Allison Wood every single one of her medical bills. And these medical bills weren't just for a two- or three-month period. These medical bills were spread out over almost three years. And the jury awarded her every single medical bill. But the jury awarded her zero for pain and suffering and zero for loss of normal life. And I filed a motion for a new trial based upon that. It was denied. That's why we're here today. Now, was there – can you point out where there was, I guess, objective evidence of pain and suffering? Isn't that what kind of boils down to in the cases? Judge Chapman, you are exactly correct. In reading Snover and Murray v. Philpott, Stamp v. Silver, and even the case cited by the defense here, the major case, Supreme Court case, that is the nuts and bolts of what this boils down to. Was there objective medical evidence to support the plaintiff's objective complaints of pain and suffering? This case is loaded with objective evidence. Right from the accident, Dr. Woodard testified that the x-rays showed permanence or strengthening of the normal lordosis or what's called loss of the normal cervical lordosis, the loss of the normal curve the cervical spine has. This was right from the accident. Dr. Woodard also testified those x-rays showed a reversal of the curve upon flexion of the neck, objectively. Also, Dr. Woodard testified there was a lateral curve in the thoracic spine. And if there were misalignments in the spine, subluxation. Interestingly, Dr. Woodard said, well, I don't have pills to compare those with from before the crash, but I think those findings are consistent with this type of crash. That is medical evidence, medical testimony, objective medical evidence to support the plaintiff's subjective complaints of pain. The plaintiff didn't complain of pain. The plaintiff said very slight neck pain, not so much that I would call it pain, more like pressure. She said she was fine. What could she do now, not do now that she couldn't do before? Nothing. She can do everything. So if a doctor says you have pain but you say you don't, who is the jury to believe? Judge Weston, it was the plaintiff's testimony in this case, first of all, that she was fine for a few days after the crash. But then she had very slight neck pain and she also had pressure discomfort. Well, when you have pressure discomfort, that's pain and suffering. Well, let me ask you this, counsel. Somewhere in the brief it said that there was a pain scale from one to ten and she put zero on there. Sure. That means no pain? I mean, is that what that was supposed to take from it? Well, the defense jury did what he wanted to summarize in this case. He didn't talk about how for the first few weeks after the crash he did complain of pain. But you would admit that every time the plaintiff stated zero that she had no pain when she was going to the chiropractor? Yes, I would admit that. I would admit that in the 20 visits from, I think, February 24 to the end of May, the first round of treatment where she reported she had no pain, sure, there was no pain. But does that mean there was no pain and suffering? What about the discomfort and the tightness and the pressure in her neck? What about the muscle imbalances and weaknesses that were objectively determined by the testing that Dr. Woodard performed? If they result in no pain, how can they be compensated? It's suffering. So there's a difference between pain and suffering? That's my position here. You can suffer without pain? Absolutely. You can have mental suffering. You can have suffering from the fact that if you're sitting in front of a computer and you're having to look down, you're having discomfort and pressure in your neck. And that's what she's complaining about? Exactly, Your Honor. She also had pressure and discomfort when she tried to do her job, waiting tables, doing her homework. There's all kinds of testimony about that. But going back to what Judge Weston brought up and what you brought up, Judge Plummer, defense ignores her complaints of pain in 2008, both times when she went back to see Dr. Woodard. And she did complain of pain in the spring of 08 and the summer of 08 when she went back to see Dr. Woodard. Dr. Woodard said that treatment was related to the crash. The jury awarded her every single medical bill from the spring of 2008 and the summer of 2008. And those records were, there was information in those records where she complained of pain. She also complained of pain in the first few weeks after the crash when she treated with Woodard. Granted, there was 20 visits from the middle of February of 05, which is about a month after this crash, until May 05, whenever Dr. Woodard initially released her, that yes, she marked every single visit no pain. That's his whole argument right there. He wants you to disregard and ignore the rest of the evidence. He wants you to disregard and ignore all the objective evidence that was presented to support her complaints of pain in the spring of 08, in the summer of 08, in the first few weeks. What's the standard of review in this case then? You're admitting that there's evidence on the other side to show no pain, and the jury presumably heard that. So what's the standard of review for us right now? It's an abuse of discretion. Did Judge Schwartz or Jackson County Circuit Court, did they abuse their discretion in not granting the plaintiff a new trial based on the evidence that was presented? The manifest way of the evidence, in my view, showed that pain and suffering was proved, not only by the plaintiff's testimony, but also by Dr. Woodard's testimony, Dr. Wood's testimony, and by the objective findings on the x-ray films, the tests that were run, and actually the muscle spasms and the tension in the muscles that Dr. Woodard felt with his own hands. That's objective. That's something that can't be fake or manipulated. He testified on numerous occasions when he placed his own hands on Allison's neck and back, he felt muscle tension or spasms. That's his testimony. That's objective evidence. What jury instructions did you give with respect to the images? Did you give loss of the normal life or just the pain and suffering? Yes, Judge Chapman, we gave jury instructions on loss of the normal life, past and future physical pain and mental suffering, past and future medical expenses. There was no instruction on loss of wages because there were no loss of wages in this case. So there was no jury instruction that said, for instance, you must award the plaintiff pain and suffering if you award the medical bills. Some lawyers are doing that now to avoid this exact situation we have here today. That wasn't done in this case. Well, that would certainly be a non-IPI construction. Sure, sure, sure. I know many lawyers now that are doing that to avoid this. They're attempting to do it, I would think. Well, there are some courts that allow it, and I guess it's in the discretion of the court to do that. But I think the court in this case, by simply – and when you read Judge Horvitz's order, he seems to key on what the defense keyed on, the 20 visits where I should complain of no pain. Well, there was much more evidence presented than just those 20 visits, and the court basically abuses discretion in not granting the plaintiff a new trial when you have all this evidence supporting the plaintiff's complaint of pain and suffering. Now, I think your father also testified. Is that correct? That's correct. And can you presume that there could be some credibility issue with regard to his expert testimony? Oh, sure. Is that fair to say? Yes, it is. Yes, it is. His testimony has to be given the appropriate weight. Obviously, and it's a good point you brought up, the defense had no retained expert, no expert in this case to refute any of the expert testimony that the plaintiff presented in this case. So Dr. Wood and Dr. Wood have both testified as to Allison's pain and suffering that she had, and just because she didn't complain to Dr. Wood of pain during 20 visits doesn't mean that she didn't have pain and suffering from this crash, when the evidence clearly supports that she did, and it's all over the place. Dr. Wood and Dr. Wood didn't complain of it herself. The plaintiff went into great detail about how her discomfort and tightness in her neck and pain and headaches she was having had an effect on her homework, her schoolwork, and her job. She told the jury about all that. Was any of that inconsistent with the records? No. No, Your Honor. All along this case had to do with she testified periodically about how she had a kink in her neck. Sometimes it was described as discomfort. Sometimes it was described as tightness. Sometimes it was pressure. But Dr. Wood and Dr. Wood testified that those symptoms are consistent with the X-ray findings. And the defense will tell you that, well, Dr. Wood didn't say they were causally related, therefore it isn't evidence. That's not true. And the Fifth District appellate court in the Murray v. Spielblatt case even said this. That was what the Fifth District pointed out. That's what the experts said. Also in the Murray v. Spielblatt case, the court quoted that which was an objective sign that was consistent with her subjective complaints of stiffness and spasms. That's our case. That's exactly our case. In this case we had two X-ray films, one in 06 and one in 08, which showed she had straightening of the lordotic curve of her cervical spine. Two. We had two sets of films in 06 and 08 that showed that she had a lateral curve in her thoracic spine. Another thing the defense counsel wants you to ignore, I think it's very important, it shows that Dr. Woodard's treatment actually helped this lady. The first set of X-rays that were done in 06, wrapped this crash, showed that she also had reversal of the lordotic curve, which is something totally separate from the straightening. It happens when you flex your neck. The cervical spine is supposed to create some sort of curve in there. Dr. Woodard said what it's doing when she flexes her neck is actually in reverse of what it's supposed to do. Yet, three or four months later, in May of 06, when he does a second set of X-rays, that reversal is gone. Dr. Woodard testified that it could be caused by muscle spasms. When the muscle spasms subside, the neck condition subsides. So that's objective medical evidence that Dr. Woodard was actually helping this lady. In 08, when she comes back in the spring and the summer, complaining of neck pain, he does another set of X-rays, which shows the spinae are still there. My point is, there's all kinds of objective evidence in this case to support that my client had a whiplash injury. The defense counsel knows that when you have a whiplash injury, loss of the lumbatic curve or straightening of the cervical spine is a typical finding that you have with whiplash injuries. Even if you assume that all these conditions pre-existed this accident, Dr. Woodard testified his opinion, this accident permanently aggravated those conditions. That's further objective medical evidence that was unrefuted, unrebutted in this case by the defense. Is there evidence about the speed of the vehicle that impacted the vehicle in which the plaintiff was riding? You know, Your Honor, my client never saw the vehicle prior to impact. I don't believe Ashley's target either. I'm not sure on that, but when I recall, it wasn't a 30 or 40 mile per hour crash. I believe it was more like a 10 or 15 mile per hour crash. And I believe I get that from Ashley Tarr's testimony. It was right near an intersection, so I kind of relied on the damage to her vehicle as an indication of the type of crash we had here. The bottom line in this case, and I think where this case is distinguished, both the Snow and the Supreme Court case, where the Supreme Court said that, of course, in that case, that it was an abuse of discretion to deny someone a new trial when the jury doesn't award medical bills, but when the jury doesn't award pants up and they award medical bills. The Snover case, the person made two accidents after the accident had issued. She had a weight lifting injury after the accident had issued. Are you abandoning your claim for loss of normal life damages now? Your Honor, that's a very good point. I think in this case, what I'm more focused on is the lack of the jury awarding her pants up. Now, I think there's some evidence for loss of normal life, but I don't think it's as compelling as the pants up ring that's been proven in this case. For example, you testified that when she was on the computer, how she would look at the computer before the crash and never had any problems. Now she had the neck tightness and discomfort. When she was waiting tables and looking down, having problems with her neck. Whenever she was doing her glass blowing, having problems with her neck. That goes to loss of normal life. I mean, obviously, she's not had a surgery. She's still able to do all the activities that she was able to do before the crash, but you have a lingering problem there that affects her activities. So that goes to loss of normal life. And sure, the jury considered that, but at the end of the day, that's evidence that was underbutted in this case. He had no expert to say that my client didn't have permanent injuries, and both of my experts in this case, who were treating physicians, testified that she did have permanent injuries from this crash. Underbutted and refuted. Back to the Snover case where the Supreme Court said that in that case that the plaintiff was informed of all her medical bills and no apparent suffering and didn't tolerate a new trial. In that case, the plaintiff was involved in two other accidents after the accident issue, had a weight lifting injury after the accident issue. In Snover, the defense had a retained expert to dispute the nature and extent of the plaintiff's injuries. There was no objective evidence of any injury in the Snover case, unlike in this case. And then in the Maple case, which was the Supreme Court case that the defense counsel brought to his brief, that had also involved another auto accident case. Interestingly, that was the defense's verdict in that case. The issues of cost and cause, contributory negligence, and damages went to the jury. And the Supreme Court said we have no idea what the jury decided. They could have very well decided that the plaintiff was contributorily at fault, and that's why there was a defense's verdict. And the facts of that crash were that a car pulled out from the side street in front of the other vehicle, and the plaintiff tried to break his vehicle, but he couldn't stop in time to avoid the crash. So he used that case as a case to support his position, and I think it's totally off-base with the case we have here. Thank you. Thank you, Mr. Rice. You'll have the opportunity for rebuttal. Mr. Nichols. Thank you, Justices. Good morning. Good morning. It's a pleasure to be in front of you for the first time. Glad you're here. Me too. A little nervous. That's okay. The question, I believe, is whether or not Judge Swartz abused his discretion in not overturning the jury's verdict, which was based upon the plaintiff's own testimony that the accident did not change her life in any way and that she felt fine and, in her words, quote, would not so much call it pain, end quote, after the accident. The jury considered all of the correct evidence. That has not been argued that there was any sort of evidentiary mistake. So I'm wondering, for over an hour since liability was decided, what was the jury considering? Well, the jury was considering the evidence that she had no pain and suffering and countering that with some of the evidence that she said on the stand that sometimes I feel it every night. So the jury considered both sides of the equation, the medical records, which showed she had no pain, Dr. Woodard's testimony that said she had no pain, and her testimony that said she could do whatever she wanted to do after the accident that she could do before the accident with no pain. So the jury came back with a verdict considering all the evidence, and did Judge Swartz abuse his discretion by upholding that jury verdict based on specific evidence entered into the record? I think not. There's several key points factually which distinguish this case from a lot of the other cases, essentially all the cases that the appellee incited. First of all, as you look at the post-trial order written by Judge Swartz, who was there and witnessed the trial, as well as myself, I agree with his statement that the testimony that resounds the loudest about the level of pain and suffering a plaintiff had came from the plaintiff herself. She testified she did not complain of pain at the scene of the accident. She testified she told everyone at the scene of the accident that she was fine and she had no pain. After having no pain, she testified she called her father and told him she was in an accident. He asked her if she was in pain. She said no. He told her, you better go get checked out by Dr. Wood, who happened to be, I'm sorry, Woodard, who happened to be a friend of her father. She testified she was fine the rest of the day of the accident. She testified that she was fine the entire day after the accident. She testified that she never consulted a medical doctor. Further distinguishing what she was feeling from pain, she wrote that it was very slight neck pain and not so much that I would call it pain, more like pressure. So she herself distinguished it from pain. Judge Schwartz used three days, the date of the accident, later that day, and the next day. What about her complaints of pain that occurred months, weeks after that the plaintiff says was presented in evidence? For 20 of those 22 visits, there was zero out of 10 pain reported. She reported, as you see in my brief, painstakingly at each visit, feels fine. I'm better. It's over. Neck and shoulders feel fine. Dr. Woodard testified he continued treating her for the maintenance aspect. So are we to understand that in the record, which I haven't seen yet, that there won't be any report by her of stichitis and tightness and problems with computers and class and waitressing and all these things? That was just trial testimony? We won't find any of that in the medical records? There will not be anything in the medical records you're accurate regarding it affecting her activities. Okay. That's true. And it's all, I'm fine, I'm fine, I'm fine. Right. Well, there are some medical records within the two- or three-year period where she comes in complaining of stiffness and soreness. And that's not suffering of some point, of some type? Well, it's not pain and suffering which was related to this accident, in my opinion. Well, your opinion is that, if you're not giving a medical opinion. Well, in Dr. Woodard's opinion. Dr. Woodard, in fact, agreed that all the objective evidence he found, the lordosis in the neck, could have been preexisting, in his opinion. He wasn't able to say to a chiropractic degree of certainty that those objective findings were caused by this accident. Furthermore, he never said those objective findings were causing her pain. So at what point, if we have a majority of evidence showing that she had no pain, and even though there is some small set of evidence where she did report pain, the question is, can the jury decide that she had no pain and suffering based upon the majority of the evidence? And I would say they could. She, the misalignment found in the x-rays, also Dr. Woodard opined that it could have been caused by her carrying her heavy purse or bag. Did you object to any award for the past medical expenses? I did not. Okay. I believe also Dr. Woodard indicated that the scoliosis was certainly, actually he says definitely, in her neck before the accident. Dr. Woodard never restricted plaintiff's activities, and this goes to your question. He actually never restricted her and she never had any complaints found in the medical records regarding her activities. Then she testified she did not change her lifestyle in any way. How old was she? She was in college age, I believe. Early 20s? Yeah. Either late teens or early 20s when the accident occurred. As the post-trial lawyer noted by Judge Schwartz, there's no reservations. Again, he's witnessing the same as we did. There was no reservations when she made the statement at trial that I'm able to do everything I can after. She also, her college roommate testified also and supported and confirmed that testimony by saying that, yeah, I was with her every day. She didn't change anything. She continued to, plaintiff testified she continued to jog. She continued to bike. She continued to work out with an elliptical machine. She continued to go on the treadmill. She continued to play racquetball. She continued to play frisbee. She continued to do sit-ups. She continued to do push-ups and other exercises. She was over happy. Well, she did, she said on the stand that there was many times that she would do those without pain. There were some times that she did feel pain. But she was able to do all of those. When we look at the case law, I do want to get to that. First of all, you brought up a good point. Dr. Wood actually maintained no records, no medical records, so we couldn't admit those into evidence at trial. No, Dr. Wood's her father. Right. And upon cross-examination, he admitted that he did violate Illinois law because chiropractors are supposed to maintain records, even if it is their daughter. Oh, really? Yes. Okay, so in his familial treatment of her, he was supposed to maintain records. That's correct, was supposed to maintain records. And another odd thing that occurred with him is he took x-rays of all his patients on their first visit, and he never took an x-ray of his daughter, never took any objective tests of her. Well, was he treating her in his office as a patient? Yes. Her father was. That's correct. I believe Snover's similar because it's a rear-ender where there's no visible sign of injury. It's the same as we have here. The plaintiff complained of neck pain and headaches in that case. So again, it goes back to that question, well, can she complain of pain and yet the jury gives zero? That is exactly what happened in the Snover case. She did complain of neck pain and headaches, which is exactly the same type of pain that's complained about here, neck pain and headaches. And the court said, were the pain and suffering element of Plante's case weak or contested? It didn't say if it's nonexistent. It said if it's weak or contested, which is exactly what happened here, the jury may merely reject Plante's pain and suffering evidence as unpersuasive or decide that a separate pain and suffering award is unjustified. And so that is what I am relying upon. In this case, it's clear there's a tremendous amount of evidence through all those visits, through the cross-examination of Dr. Woodard and Wood, through Plante's testimony, that there was no pain and suffering. The Murray case, he relies on that a lot. It's not an automobile accident. It's very different. Plante and her three friends watched Vandalia Lake to go skiing. And while she's in the water trying to get on her skis, another boat comes by, runs over the rope, her rope that she's holding onto, slams her head into the water. We don't have that here. In fact, Plante testified specifically not one portion of her body hit any portion of the inside of the vehicle. She didn't hit her head on the dash or elbow on the door or anything of that sort. And what happened in that case, what the seminal thing that happened in that case that happens in all the cases where they believe pain and suffering should be awarded, she went to an emergency room and complained of pain immediately. That's not what we have in our case. There were three different physicians in that case. We don't have one single medical doctor who looked over Plante in our case. All three doctors found objective signs of injury. There was a neurologist. There was an orthopedic surgeon. She was actually diagnosed with median nerve mononeuropathy in her cervical spine. So it was a specific nerve that was causing a problem that was objectively seen by the physicians. We don't have that in this case. She missed nine weeks of work, and the jury awarded her for lost wages. Our lady in this case missed no work. She missed no school. She went right back to what she was doing the day after the accident. The jury awarded home health care, which was not even claimed or awarded in our case. The court found her pain and suffering was primarily objective based upon the numerous physicians who agreed and based upon her complaint. This is the key issue. Based upon her complaint of pain immediately after the accident. We don't have that here. The Stamp case, which is also cited by him, is not a Fifth District case, and it sounds like he's abandoning it at this time, given that I cited five cases which were not in the Fifth District, which were directly contrary to the Stamp case. There's a tremendous amount of difference between the Stamp case and our case. Again, in that case, she hit her head on the headrest. So again, we have an impact of the body part onto something else. The same that we had in the Murray case. We don't have that in this case. She testified directly after the impact. She had extreme lower back spasms, headache, and stiffness in her neck. Our plaintiff in this case testified she was fine. The accident in that case occurred on a Friday. Her pain got worse over the weekend, and then her pain actually radiated down into her index finger. We don't have any of that evidence in this case. The plaintiff in the Stamp case did not call her doctor because her father told her to do so, but because she was actually experiencing pain. Again, another difference. She was diagnosed with a disc bulge in her neck, and then the question was, was the bulge degenerative or was it caused by the accident? We have no disc bulge, no MRI. The opinions coming from the physicians in that case were based upon the MRI films, which did show an injury, soft tissue injury. We don't have that in this case. Furthermore, in that Stamp case, the defense counsel in his closing argument conceded that she had pain and suffering and the jury should give her $5,000. So you're dealing with a case there where it's uncontroverted. I contested the pain and suffering in this case from day one all the way through the end of trial, and so we have an entirely different situation. In closing, I believe that if this verdict is found inconsistent, we're going back to the old days of the per se law, which says that a jury can't do this, that it's just automatically inconsistent, because this case is really a prime example of why the Snover case was decided, in my opinion, because there's the significant amount of evidence that she suffered little to no pain or suffering. Thank you. Thank you, Mr. Nichols. Mr. Rice, you have the opportunity to rebut. What was the time interval between her first visit and the accident? Just roughly? Two or three days. Your Honor, these x-ray findings that I talked about at nauseam, those were only from the chiropractors. They were also from radiologists. The radiologists had read those films, and Dr. Woodard had received copies of the radiology reports from the radiologists who read the films. So she was not at a chiropractic office when she had the x-rays taken? She was at a clinic or an ER room or a doctor's office? What happened was the x-rays were taken at Woodard's office, but they were read initially by a radiologist, and Dr. Woodard reviewed the films and agreed with the findings. And we'll see that on the records? Yes, I even asked him in trial, did you review a lot of the radiologist's reports? So we didn't go into the name of the radiologist. We just established that he did receive radiologist's reports in conjunction with the films, and then he reviewed the films. So I wanted to clarify that. Just because someone doesn't have a permanent restriction doesn't mean they didn't have pain and suffering. You know, I do orphans in Orphan's Comp, but we're not here for Orphan's Comp, but I represent many Orphan's Comp clients all throughout Southern Illinois who have neck and back surgeries that go back to work full-duty, no restrictions. It doesn't mean they didn't have pain and suffering. It just means they don't have permanent restrictions. So I don't see the fact that she wasn't restricted from her activities precludes the finding of pain and suffering here. They're totally separate issues. Our pain and suffering claims are not weak and contested. Quite frankly, I think they're very strong. They're supported by numerous radiographical findings. They're supported by physical exam, objective physical exam findings. They're supported by two functional capacity evaluations that were done. They're supported by Dr. Woodard's own hands. When he touches the patient and he feels this tension and the spasms, that's all objective evidence, everything of it. And he's got nothing to contest it. The stamp case, I didn't have time to talk about it, but I think it actually supports my position. That's why I put it in my brief. In that case, here's what the court said. The plaintiff had objective symptoms of injury in that she had an aggravation to preexisting arthritis in the neck which showed up on the fence. Dr. Woodard testified that even if he assumed all these findings predated the crash, they were aggravated and aggravated permanently, just like in the stamp case. There wasn't any injury that was testified to or reported any prior injury in her case? None whatsoever. The medical history is totally clean before this crash. So it would be speculative for the jury to presume that there was a prior injury that could be responsible for the... Exactly, and the reason why I asked Dr. Woodard that question at trial was because he said these findings, the loss of normal lordosis, straightening of the spine, the reversal of the curve, these are all consistent with the crash, consistent with the whiplash injury she had, that I can't say for 100% certainty that they're from this crash because I didn't have films from before the crash. So once I got that answer, I said, well, Dr. Woodard assumed hypothetically that these conditions were there before the crash. In your opinion, were they aggravated based on her symptomatology? Well, yes. Is the aggravation permanent? Yes. There's no evidence to contradict that. He has no pertained expert to render an opinion that goes against that. If the court's going to decide that it's because she didn't report pain on form, Dr. Woodard for a class of 20 visits between a two-month time period, that precludes her from getting a warrant for pain and suffering, it's my argument that that's not Illinois law. That's what the defense wants you to believe, but that's not Illinois law. Can the jury consider that when awarding pain and suffering? Absolutely. Yeah, absolutely. But the jury must also consider all the other evidence. It weighs the testimony, right? That's right. Did it not weigh the testimony in this case? I can only assume they did. I wasn't in the jury room, but I can only assume that they weighed the testimony, which, quite frankly, was heavily in favor of the plaintiff. So in weighing the testimony, besides those 20 visits where she complained of pain, where's the evidence that she didn't have pain and suffering? That's it. Those 20 visits where there was mark on the form she had no pain, that's the only evidence in this case that she did not have pain and suffering. Just because someone doesn't have symptoms immediately after the crash doesn't mean she wasn't injured. A lot of times in these soft-tissue injury cases, it takes a few days for symptoms to start to develop. Thank you. Thank you both for your briefs and argument.